**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR NASCIMENTO and AUDRY YULE, <br><br> Plaintiffs, <br><br> v. <br><br> ANHEUSER-BUSCH COMPANIES, LLC, <br><br><br><br><br> Defendant. | Civil Action No. 2:15-02017 (CCC) (MF) <br><br><br> **OPINION** |

**CECCHI, District Judge.**

Defendant Anheuser-Busch Companies, LCC ("Defendant," "Annheuser-Busch," or the "Company") moves to dismiss the action filed by Plaintiffs Victor Nascimento and Audry Yule ("Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. ECF No. 6. Plaintiffs oppose the motion. ECF No. 12. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the Court grants Defendant's motion to compel arbitration.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are accepted as true for the purposes of the instant Motion. Until

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

2010, Plaintiffs were employees of Jersey Eagle Sales Company ("Jersey Eagle"). Compl. ¶ 4. In or about 2012, Defendant purchased Jersey Eagle and Plaintiffs submitted applications for employment with Defendant. See Affidavit of Carol Verdon ("Verdon Aff."), ECF No. 6-2, Ex. A, Ex. B. The text of those applications stated in relevant part:

> If hired, . . . I agree that work-related disputes between the Company and me will be subject to final and binding arbitration under the Company's Dispute Resolution Program [("DRP")]. I further agree that arbitration will be the exclusive method the Company and I will have for final and binding resolution of claims covered by the DRP.

(the "Employment Application"). Id. Plaintiffs each signed the Employment Application on September 30, 2010. Id. Following submission of the Employment Applications, Defendant sent Plaintiffs offers of employment stating:

> Anheuser-Busch uses a Dispute Resolution Program ("DRP") for all employment related disputes, the last step of which is final and binding arbitration. The DRP will be a term and condition of your employment and your exclusive remedy for any employment claims you may have. By accepting employment with Anheuser-Busch Sales of New Jersey, you agree to submit all claims to the DRP.

(the "Offer Letter"). Verdon Aff. Ex. C, Ex. D. Mr. Nascimento signed his Offer Letter on October 29, 2010. Verdon Aff. Ex. C. Ms. Yule did not sign her Offer Letter until November 2, 2010. Verdon Aff. Ex. D.

On or about November 1, 2010, Defendant gave Plaintiffs a copy of its Dispute Resolution Policy ("DRP" and, collectively with the Employment Application and the Offer Letter, the "Arbitration Agreement"). Verdon Aff. ¶ 10. On the first page of the DRP was a section entitled "SPECIAL NOTICE TO EMPLOYEE," which provided:

> This policy constitutes a binding agreement between you and the company for the resolution of employment disputes. By continuing your employment with Anheuser-Busch Companies, Inc., or any of

2

> its subsidiary companies ("Company"), you and the Company are agreeing as a condition of your employment to submit all covered claims to the Anheuser-Busch Dispute Resolution Program ("DRP"), to waive all rights to a trial before a jury on such claims, and to accept an arbitrator's decision as the final, binding and exclusive determination of all claims.

Verdon Aff. Ex. E at 1.

On or about September 5, 2014, Defendant terminated Plaintiffs' employment. Compl. ¶ 21. On January 8, 2015, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Hudson County, asserting claims for wrongful discharge and racial discrimination in violation of the New Jersey Law Against Discrimination. ECF. No. 1 at 8-13. On March 19, 2015, Defendant removed the action to this Court. ECF No. 1. On April 9, 2015, Defendants moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

On November 20, 2015, this Court requested further briefing clarifying the parties' positions as to whether the plain language of the DRP required the arbitrator's written award to be kept confidential. ECF No. 20. The parties submitted supplemental briefing on December 11, 2015. ECF Nos. 21, 22.

## II. LEGAL STANDARD

### A. The Presumption of Arbitrability

There is a strong federal policy in favor of arbitration rooted in the Federal Arbitration Act. See, e.g., Puleo v. Chase Bank, N.A., 605 F.3d 172, 178 (3d Cir. 2010). Indeed, the "[FAA] reflects an emphatic federal policy in favor of arbitral dispute resolution." KPMG LLP v. Cocchi, 132 S.Ct. 23, 25 (2011) (emphasis added). In considering the validity of an arbitration agreement, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the

contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24–25; see also Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003). As such, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960).

### B.     Motion to Compel Arbitration

Even in light of the strong federal presumption of arbitrability, arbitration is "strictly a matter of contract." Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." Id. Thus, in deciding whether a party may be compelled to arbitrate under the FAA, a court must first consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (citation and internal quotation marks omitted).

As to the first consideration, a district court "must initially decide whether the determination is made under Federal Rule of Civil Procedure 12(b)(6) or 56." Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard is appropriate where "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (citation and internal quotation marks omitted).

The Rule 56 standard is appropriate where: (1) "the motion to compel arbitration does not

4

have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." Id. at 774. Summary judgment under Rule 56 is appropriate if the record demonstrates that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); see also Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

### III. DISCUSSION

#### A. Standard of Review

As a threshold matter, the Court must determine which standard of review governs Defendant's motion. In this case, the existence of an agreement to arbitrate is not apparent from the face of Plaintiffs' Complaint, which does not mention the DRP, the Employment Application, or the Offer Letter. Instead, Defendant's motion to compel arbitration relies exclusively on matters outside the pleadings. Accordingly, the Rule 56 standard governs. As Plaintiffs do not request discovery or contest the Arbitration Agreement's existence, the Court will consider Defendant's motion on the existing record. See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54, n.9 (3d Cir. 1980) (holding the existence of an agreement to arbitrate may be decided by the court as a matter of law "when there is no genuine issue of fact concerning the formation of the agreement"); Alexander v. Raymours Furniture Co., No. CIV.A. 13-5387, 2014 WL 3952944, at *3 (E.D. Pa. Aug. 13, 2014) (considering a motion to compel arbitration under the summary judgment standard on the existing record where the plaintiff did

5

not contest the existence of the defendant's arbitration policy or request discovery).

### B. Validity of the Arbitration Agreement

As Plaintiffs do not appear to argue their claims are outside the scope of the Agreement, the only question before this Court is whether a valid arbitration agreement exists. For the reasons set forth below, this Court finds the Arbitration Agreement is valid and therefore enforceable.

Plaintiffs argue the Arbitration Agreement is invalid for the following reasons: (1) the provisions in the Employment Application and Offer Letter do not meet the requirements for a knowing and voluntary waiver of the right to a jury trial; (2) the Arbitration Agreement is an illusory promise because Defendant reserved for itself the unilateral right to modify the terms of the contract; (3) the Arbitration Agreement is invalid because it does not explain the differences between arbitration and litigation; (4) the Arbitration Agreement is unconscionable because it limits discovery; and (5) the Arbitration Agreement violates public policy because it requires the parties to keep the award confidential. ECF No. 12 at 1. This Court addresses each of those arguments in turn.

#### 1. Notice of Waiver of Jury Trial Right

Plaintiffs first argue the Arbitration Agreement is invalid because the Offer Letter and Employment Agreement do not specifically state that by agreeing to arbitration, the employee gives up the right to a jury trial. Although the DRP does state that "[b]y continuing employment with Anheuser-Busch []," the employee accepts the DRP and "waive[s] all right to a trial before a jury," Verdon Aff. Ex. E at 1, Plaintiffs contend that provision does not apply to them because Plaintiffs received the DRP only after signing the Offer Letter and commencing employment

with Defendant. Pl. Br. in Opp. at 11.[2]

The Court disagrees, finding Plaintiffs accepted the jury waiver set forth in the DRP by continuing their employment with Defendant. New Jersey courts have held that where an arbitration agreement states an employee accepts its terms by continued employment, the agreement will bind an employee who continues employment beyond the agreement's effective date. See Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 474–75 (N.J. App. Div. 2015) (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 88–89 (2002) ("[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements.")). Here, the DRP specifically states employees accept its terms by continued employment and Plaintiffs continued their employment with Defendant for nearly four years after receiving the DRP.[3] Accordingly, the Court finds Plaintiffs are bound by the DRP's jury waiver.

2. **Illusory Promise**

Plaintiffs next argue the Arbitration Agreement is illusory because Annheuser-Busch retained the right to modify or discontinue the DRP. "New Jersey Courts, in accordance with the

---

[2] The Court notes that Plaintiff Yule appears to have received the DRP prior to signing her Offer Letter. See Verdon Aff. ¶10, Ex. D.

[3] To the extent Plaintiffs contend the Appellate Division's decision in Barr v. Bishop Rosen & Co., 442 N.J. Super. 599 (N.J. App. Div. 2015) should guide this Court's reasoning, the facts of that case are distinguishable. The plaintiff employee in Barr received a memorandum explaining that his employer's arbitration policy contained a jury waiver in 2000 but did not sign a contract containing an arbitration clause until 2009. See id. at 607–10. The Appellate Division carved out a limited exception to the rule it articulated in Jaworski, holding that, in light of the intervening nine-year gap, the two documents could not be read together to form a valid arbitration agreement. Here, by contrast, Plaintiff Yule received the DRP prior to signing her Offer Letter and Plaintiff Nascimento received the DRP approximately three days after he signed his Offer Letter.

Restatement [of Contracts], define an illusory promise as a 'promise which by [its] terms make performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue.'" Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 577–78 (D.N.J. 2002) (quoting Restatement (Second) of Contracts § 2).

Plaintiffs contend the Arbitration Agreement is illusory because it provides Defendant "may, at its sole discretion, modify or discontinue the DRP at any time by giving the Employee 30 calendar days' notice." Verdon Aff. Ex. E at 3. However, that provision further states "any dispute pending in the DRP at the time of any announced change [shall be adjudicated] under the terms of the procedure as it existed when the dispute was initially submitted to the DRP." Id. Accordingly, although Defendant retains the right to modify the DRP as applied to future disputes, it has no right to modify the DRP as applied to an existing dispute. Therefore, once a dispute is submitted, its performance under the Arbitration Agreement is not "entirely optional" and the Agreement is therefore not illusory. See Bourgeois v. Nordstrom, Inc., No. CIV.A. 11-2442 KSH, 2012 WL 42917, at *5–6 (D.N.J. Jan. 9, 2012) (holding Nordstrom's reservation of the right to change terms in the future without affecting existing claims did not make the arbitration agreement an illusory promise under New Jersey law).

### 3. Enforceable Jury Waiver

Third, Plaintiffs argue the Arbitration Agreement is not an enforceable jury waiver under New Jersey law. In determining whether an arbitration agreement is valid, this Court's analysis is guided by principles of contract formation. See AT&T Mobility, 131 S. Ct. at 1746. To satisfy the requirements to knowing waiver of a jury right in an arbitration agreement under New Jersey law, "the [arbitration] clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve

the dispute." Atalese, 219 N.J. at 1746.

Here, as discussed above, the DRP states that by continuing employment with Annheuser-Busch, the employee "waive[s] all right to a trial before a jury." Verdon Aff. Ex. E at 1. It further explains the procedural differences between arbitration and a judicial proceeding in a subsection entitled "How does arbitration differ from a court trial?" Id. at 22. Thus, the Arbitration Agreement not only explains that the employee waives the right to a jury trial, it specifies the procedures the employee forgoes in agreeing to arbitration. Accordingly, the Court finds the Arbitration Agreement's jury waiver is enforceable.

### 4. Discovery

Fourth, Plaintiffs assert the Arbitration Agreement is unconscionable because it "unduly restricts discovery" by capping the number of depositions and interrogatories. ECF No. 12 at 18. However, discovery is not insufficient merely because it is less than would be permitted in a court of law. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991). "An arbitration agreement may impose limitations on discovery as long as those limitations are not so severe as to deprive the parties of 'a fair opportunity to present their claims.'" Pyo v. Wicked Fashions, Inc., No. CIV09-2422(DRD), 2010 WL 1380982, at *8 (D.N.J. Mar. 31, 2010) (quoting Gilmer, 500 U.S. at 31 (1991) (upholding discovery limitations in the context of an employment discrimination suit based on age)).

Here, the DRP permits each party to serve ten interrogatories, depose two fact witnesses and all expert witnesses named by the other party, and request document production. Verdon Aff. Ex. E Art. 7.3(a)–(c). It further provides that "[t]he arbitrator may grant, upon good cause shown, either party's request for additional or alternative discovery above and beyond [the aforementioned provisions]." Plaintiffs fail to explain how these provisions, apart from limiting

discovery, deprive them of a fair opportunity to present their claims. Accordingly, the Court finds Plaintiffs' contention that the Arbitration Agreement is unconscionable without merit.

### 5. Confidentiality

Finally, Plaintiffs argue Article 17.4 of the DRP is unconscionable because it requires the parties to keep the arbitration award confidential. Plaintiffs' argument relies on Delta Funding Corp. v. Harris, 189 N.J. 28 (2006), in which the New Jersey Supreme Court stated "[i]t is not unconscionable to require that the proceedings before the arbitrator be kept confidential when the arbitrator's written award is not required to be kept confidential." Id. at 50. Plaintiffs argue Delta Funding thus "implicitly held that arbitration agreements that require the parties to keep the arbitrator's award confidential are unconscionable." ECF No. 22 at 1. Even if this Court were to adopt Plaintiff's reading of Delta Funding, the DRP is not unconscionable because Article 17.4 does not require the parties to keep the arbitration award confidential.

Article 17.4 of the DRP states "[n]either party shall agree to publish the Arbitrator's award or arrange for publication of the award." Verdon Aff. Ex. E Art. 17.4. Plaintiffs assert, without explanation, that the DRP's prohibition on the publication of the award requires the award to be kept strictly confidential. See Pl. Supp'l Br., ECF No. 22, at 1-2. Defendant disagrees and represents that

> [i]n agreeing not to publish the award, the parties agreed to refrain from submitting the award to the AAA or a publishing service, such as BNA, for public dissemination. This agreement does not, however, prevent the parties from, inter alia, using the award in subsequent court proceedings to enforce or vacate the award . . . . In addition, . . . Article 17.4 would not prevent the award's discovery during, for example, a similar proceeding brought in a similar locale wherein analogous theories are raised.

Def. Supp'l Br., ECF No. 21, at 1. By contrast, "confidential" means "information to be kept secret, imparted in confidence." Confidential, Black's Law Dictionary (10th ed. 2014).

10

Accordingly, the Court does not find that Article 17.4 requires the arbitration award to be kept confidential.

## IV. CONCLUSION

For the foregoing reasons, this Court finds the parties entered into an enforceable agreement to arbitrate the instant dispute. Accordingly, Defendant's motion to compel arbitration is granted. An appropriate order follows this opinion.

DATED: August 24, 2016

**CLAIRE C. CECCHI, U.S.D.J.**